UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEYON T. ROBERTS, a/k/a, DION T.
ROBERTS,

**No. 6:15-cv-06525-MAT**
**DECISION AND ORDER**

                           Petitioner,

      -vs-

DALE ARTUS, Superintendent, ATTICA
Correctional Facility,

                         Respondent.

---

## INTRODUCTION

Pro se petitioner Deyon T. Roberts, a/k/a, Dion T. Roberts ("Petitioner" or "Roberts") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction entered against him on March 4, 2011, in Erie County Court (Amico, J.) of New York State. Petitioner was convicted, following a jury trial, of Burglary in the Second Degree (New York Penal Law ("P.L.") § 140.25(2)).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the morning of September 10, 2009, Jesse Lewis ("Lewis") took his puppy, Tyson, out for a 45-minute walk. When he returned to his apartment building at 608 Niagara Street in the City of Buffalo, he paused in the doorway to let Tyson in. As he glanced up, he saw a black male who he did not know coming out of his apartment, carrying a crowbar. The man looked startled. When Lewis

-1-

asked what was going on, the man yelled something, and a second black male emerged from Lewis' apartment, holding a pistol. The men were about 20 feet away, and the hallway was well lit. The entire encounter lasted about 5 to 6 seconds. Lewis closed the door, leaving Tyson behind, and went down the street, where he called 911 on his cell phone. While Lewis was on the phone, he saw the second man, who was wearing a hat, running toward the backyard at 608 Niagara.

Buffalo Police Department ("BPD") Officer Kenneth Devlin ("Officer Devlin") spoke to Lewis at the scene, who described the intruders as very large, well-built men. Officer Devlin searched the backyard without success and proceeded into the next vacant lot, where he heard some rustling over by a car. As he approached the area, a tall black male (Petitioner) jumped out in front of him. The man was sweaty, covered in burrs and weeds, and breathing hard. Officer Devlin handcuffed Petitioner and walked him to Niagara Street to put him in the patrol car. They encountered Lewis, who was standing in front the house. Officer Devlin recounted that Lewis stated, "That's him!"

Several other BPD officers testified regarding their role in the investigation. Officer Edwin Torres found a gym bag in the driveway, which contained a live puppy, a crowbar, a screwdriver, a Kevlar vest, and a pair of leather gloves. Nearby, Officer Allen Gallagher found a loaded, jammed gun with the hammer cocked back.

Also, a watch was recovered at 608 Niagara Street. All of these items (except the puppy) were submitted for DNA testing. A forensic serologist testified that the right glove contained traces of DNA matching Petitioner's genetic profile. The watch contained DNA consistent with Petitioner's genetic profile, which, according to the serologist, meant there was a 1 in 22.9 million chance of randomly selecting a person other than Petitioner who matched that profile.

Petitioner took the stand and testified that on the morning of September 10, 2009, he had eaten at the Niagara Cafe at the corner of Niagara and Pennsylvania after having worked out earlier in the day at the park on 10th Street. He was headed to see a friend of his wife's to ask her if she would babysit for them so he and his wife could have a date-night. The friend was not home, so Petitioner walked through a field to go to the gas station to get some water. Halfway through the field, he nearly bumped into a police officer coming around the bend. Petitioner excused himself, but the officer told him to stay where he was. When Petitioner asked why and what had he done, the officer drew his gun and told him to get on the ground. Petitioner insisted he had not done anything, but complied with the officer, who he said was becoming hostile and louder. Then, Lewis walked up with another police officer while Petitioner was still lying on the ground. Petitioner heard Lewis say, "that's him, right."

After being issued an <u>Allen</u> charge, the jury returned a verdict convicting Petitioner and his co-defendant, Njera Wilson, of the second count of the indictment (second degree robbery); and acquitting them of the first count (first degree robbery).

Following a hearing, Petitioner was adjudicated a persistent violent felony offender and sentenced to a term of 16 years to life in prison.

Represented by counsel, Petitioner pursued a direct appeal of his conviction; Petitioner also filed a <u>pro</u> <u>se</u> supplemental appellate brief. The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed the conviction, and leave to appeal to the New York Court of Appeals was denied. <u>People v. Roberts</u>, 111 A.D.3d 1308, 1309 (2013), <u>lv.</u> <u>denied</u>, 23 N.Y.3d 967 (2014). Petitioner also filed four <u>pro</u> <u>se</u> motions to vacate the judgment, and an application for a writ of error <u>coram</u> <u>nobis</u>, which were unsuccessful.

Petitioner then timely commenced this habeas proceeding. Respondent answered the petition, and Petitioner filed a reply brief. For the reasons discussed below, the Court denies Petitioner's request for a writ of habeas corpus and dismisses the petition.

## DISCUSSION

## I. Ineffective Assistance of Trial Counsel (Petitioner's Points I & II)

### A.   Procedurally Defaulted Claims

-4-

Petitioner asserts a number of grounds on which trial counsel was ineffective. Respondent argues that some of them are procedurally defaulted under the adequate and independent state ground doctrine. In particular, Respondent points to Petitioner's claims that trial counsel was ineffective in failing to move to dismiss the indictment on "speedy trial" grounds, which Petitioner raised in a C.P.L. § 440.10 motion. The trial court denied it, citing two state procedural grounds, C.P.L. § 440.10(3)(c) and § 440.10(2)(c). Respondent argues that this rendered the claim procedurally defaulted from habeas review. See, e.g., Ryan v. Mann, 73 F. Supp.2d 241, 248 (E.D.N.Y. 1998) ("[T]he last state court rendering a judgment clearly and expressly stated that its judgment rested on two alternative state procedural bars: (1) because petitioner failed to raise his ineffective assistance claim on direct appeal and the claim appeared on the trial court record, he was automatically barred from 440 review under [C.P.L.] § 440.10(2)(c), and (2) even if the petitioner could not have raised the claims on direct appeal, because petitioner failed to raise these claims in his first 440 application, the court was exercising its discretion to bar him from raising the claims in a successive 440 application under § 440.10(3)(c). The petitioner does not appear to argue that either procedural rule is not regularly followed. The County Court's dismissal of the petitioner's ineffective assistance claim thus rested upon an independent and

-5-

adequate state ground.") (footnote and internal citation omitted), <u>aff'd</u>, 201 F.3d 432 (2d Cir. 1999). The Court agrees, and Petitioner concedes that these claims are procedurally barred from habeas review. <u>See</u> Petitioner's Reply (Dkt #8), p. 2 of 19.

Respondent also notes that Petitioner's assertion that trial counsel erroneously failed to demand a mistrial when co-defendant's counsel allegedly violated the <u>Sandoval</u> ruling has been raised for the first time in the instant petition. Therefore, Respondent argues, the claim was never fairly presented to the state courts for one complete round of appellate review, and it is unexhausted. Because it is a record-based claim, if Petitioner were to raise it in a C.P.L. § 440.10 motion, the trial court would be obligated to deny it based on C.P.L. § 440.10(2)(c), rendering the claim constructively exhausted, but procedurally defaulted. <u>E.g.</u>, <u>Reyes v. Keane</u>, 118 F.3d 136, 139-40 (2d Cir. 1997). Petitioner concedes that the claim procedurally defaulted from habeas review. <u>See</u> Petitioner's Reply (Dkt #8), p. 2 of 19. The Court accordingly dismisses both of these ineffective assistance claims as subject to an unexcused procedural default.

**B.   Exhausted Claims**

Respondent concedes that Petitioner has exhausted some of his ineffective assistance of trial counsel claims, but argues that they are without merit.

**1. Overall Lack of Zealous Representation**

-6-

First, Petitioner contends vaguely that trial counsel did not
zealously represent him at trial and left unspecified decision-
making up to co-defendant's counsel.  "It is well established that
conclusory allegations, such as these, are insufficient to meet the
rigorous standard under Strickland v. Washington[, 466 U.S. 668
(1984)]." Smalls v. McGinnis, No. 04 CIV.0301(AJP), 2004 WL
1774578, at *23 (S.D.N.Y. Aug. 10, 2004) (citing, inter alia,
United States v. Vargas, 920 F.2d 167, 170 (2d Cir. 1990)
(petitioner's affidavit making allegations in a "conclusory
fashion" failed to demonstrate that counsel's decision not to call
a witness was unreasonable), cert. denied, 502 U.S. 826 (1991)).
Petitioner's bare and unsupported assertions that trial counsel was
insufficiently zealous and too reliant on co-counsel fail to
overcome the Strickland presumption that counsel acted reasonably.
See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance. . . ."). This claim must be
dismissed. E.g., Matura v. United States, 875 F. Supp. 235, 237
(S.D.N.Y. 1995).

### 2.   Pre-Trial Discovery Issue

Second, Petitioner asserts that trial counsel failed to
confront the trial court about discovery material that allegedly
was not provided, in particular, a compact disc containing crime
scene photographs, including a photograph (People's Exhibit 62),

which purportedly contradicted the prosecution's theory of the case linking Petitioner to the crime. Petitioner relied on the affidavit of Attorney Farley, who relieved Attorney Harrington prior to sentencing, in which he stated that the file he received from Attorney Harrington did not contain a compact disc. Petitioner raised this claim in his first and second C.P.L. § 440.10 motions. In the order denying the first C.P.L. § 440.10 motion, the trial court ruled that Petitioner had failed to prove that the prosecution did not provide the defense with the afore-mentioned compact disc. As the trial court noted, the prosecution submitted proof that Attorney Harrington, who tried the case, was aware of the disc. Further, the assistant district attorney stated under oath that the disc was provided to the defense. The trial court observed that in the People's Answering Affirmation to Defendant's Omnibus Discovery Demands, at paragraph 9, the assistant district attorney stated that he was "attach[ing] . . . color copies of the crime scene pictures . . . together with a compact-disc containing the original digital picture files." Moreover, at no time during trial did Attorney Harrington state that he was *not* provided with the crime scene pictures or the compact disc.

In the order denying the second C.P.L. § 440.10 motion, the trial court noted its previous ruling, and observed that the affidavit of Attorney Farley to the effect that the file he received did not contain a compact disc did not prove that Attorney

-8-

Harrington, the prior attorney, did not at one time possess the disc. The trial court further observed that Petitioner failed to submit a sworn statement from Attorney Harrington stating that he was *not* provided with a copy of the compact disc. In short, the trial court found that Petitioner's assertions were wholly unsubstantiated.

The Court has reviewed the record, and the trial court's determination of the facts clearly was not unreasonable in light of the evidence presented, see 28 U.S.C. § 2254(d)(2). Nor has Petitioner come forward with clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), to rebut the presumption of correctness accorded to the state court's factual findings. This claim is dismissed as without merit.

### 3. Deficient Litigation of Identification Issue

Third, Petitioner faults trial counsel for failing to seek to reopen the Wade hearing on the basis that Officer Devlin, who testified at the hearing, and Lewis, who did not testify at the hearing, gave "completely different" accounts of how an identification was made by the victim. According to Petitioner, if counsel had reopened the hearing, and compelled the victim to testify, the trial court would have ruled that his identification was inadmissible, and the victim then would have been precluded from making an in-court identification of Petitioner. The trial court, in denying Petitioner's third C.P.L. § 440.10 motion

-9-

asserting this claim, found it to be "without basis" and underpinned only by "unsupported allegations, surmise, and excessive speculation. . . ." The trial court also stated that an attorney is not expected to make a motion that has "little to no chance of success."

"Under New York law, the trial court has discretion to reopen a <u>Wade</u> hearing if 'additional pertinent facts' are discovered that could not have been discovered with reasonable diligence before the <u>Wade</u> determination and that go 'to the issue of official suggestiveness such that they would materially affect or have affected the earlier <u>Wade</u> determination.'" <u>Lynn v. Bliden</u>, 443 F.3d 238, 249 (2d Cir. 2006) (quoting <u>People v. Clark</u>, 88 N.Y.2d 552, 555 (1996)). Petitioner's argument is based solely on an alleged discrepancy between what Officer Devlin testified he said to Lewis at the time of the show-up, and what Lewis testified that Officer Devlin said to him at the time. Petitioner has not demonstrated that these are new, pertinent facts that could not have been discovered with reasonable diligence before the <u>Wade</u> ruling. Thus, Petitioner has not shown any reasonable probability that trial counsel could have obtained a reopening of the hearing.

Even considering Petitioner's claim on the merits, the Court finds that there is no reasonable probably of a different outcome had the <u>Wade</u> hearing been reopened. Petitioner notes that at the <u>Wade</u> hearing, Officer Devlin testified that as he was escorting

Petitioner to his patrol car, Lewis, who was standing in front of his home with other BPD officers, pointed to Petitioner and announced, "That's him!" Petitioner's Reply to People's Opposing Affidavit[1] (quoting Transcript of Wade Hearing ("Hrg Tr.") at 12:6-12, 18:5). At trial, Lewis testified that he was in the backyard with the police officers, who "effectuated [the] misidentification procedure by first holding complainant back from where a supposed suspect was, and then secondly by asking him 'is [this] him?', all while [Petitioner] was handcuffed and lying on the ground. . . ." Id. (quoting Trial Tr. at 439, 440:1-13, 23-25; 441:1-2; second brackets in original).

An identification violates due process only when, based on the "totality of the circumstances[,]" Neil v. Biggers, 409 U.S. 188, 196 (1972) (quotation omitted), surrounding the confrontation, it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 197 (1972) (quotation omitted). "[T]his is a very difficult test to meet." United States ex rel. Williams v. LaVallee, 415 F.2d 643, 644-45 (2d Cir. 1969) (citation omitted). Here, there is no reasonable probability that even assuming the truth of Lewis' version, the trial court would have ruled that the on-the-scene identification was "impermissibly suggestive." See United States v.

---

[1]

This Reply was submitted as part of Respondent's Exhibit ("Ex.") E, which includes the pleadings and order filed in connection with Petitioner's June 27, 2014 C.P.L. § 440.10 motion to vacate.

<u>Sanchez</u>, 422 F.2d 1198, 1200 (2d Cir. 1970) ("The police verified Tyes's identification of defendants by asking the street gamblers who came up to the patrol car if Sanchez and Jones[, the suspects who had been arrested and were sitting in the patrol car,] were 'the guys.' Under the circumstances presented, we think this police conduct was reasonable and not overtly suggestive."). Moreover, trial counsel made the argument to the trial court at the <u>Wade</u> hearing that Officer Devlin was "horribly sloppy" and that "to put cuffs on [Petitioner] and walk him in right in front of the complainant is highly suggestive . . . and inappropriate." Petitioner's Appellate Brief[2] at 4 (quoting <u>Wade</u> Hearing Transcript at 30, 31-32). Because Petitioner has not made "some showing of the likelihood for success at the hearing[,]" <u>Lynn</u>, 443 F.3d at 249, this ineffective assistance of counsel claim based on the failure to move to reopen the <u>Wade</u> hearing must fail. <u>See</u> <u>id.</u> at 249-50.

## II. **Verdict Against the Weight of the Evidence (Petitioner's Point III)**

Petitioner asserts, as he did on direct appeal, that the verdict is against the weight of the evidence because the victim's testimony was unworthy of belief, and that the jury erroneously failed to credit Petitioner's version of events. The Appellate Division rejected this contention, "not[ing] in particular that the

---

[2]

This is attached as part of Resp't Ex. B, which includes the appellate briefs and the Appellate Division order affirming the conviction.

jury's credibility determinations are entitled to great deference. . . ." <u>Roberts</u>, 111 A.D.3d at 1309 (quotation marks, quotations, and citations omitted). Respondent correctly argues that Petitioner's weight of the evidence claim presents a question of state law that is not cognizable on federal habeas review. In his reply brief (Dkt #8), Petitioner concedes this point. Accordingly, Point III of the Petition, asserting a weight of the evidence claim, is dismissed as not cognizable. <u>E.g.</u>, <u>Correa v. Duncan</u>, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. . . . Accordingly, the Court is precluded from considering the claim.") (citing 28 U.S.C. § 2254(a); internal and other citations omitted).

## III. Verdict Not Supported by Legally Sufficient Evidence (Petitioner's Point IV)

Petitioner re-asserts his claim, raised on direct appeal, that the prosecution failed to prove beyond a reasonable doubt his identity as the perpetrator of the burglary. The Appellate Division rejected this contention as unpreserved, finding that trial counsel's "motion to dismiss was not specifically directed at the ground advanced on appeal[.]" <u>Roberts</u>, 111 A.D.3d at 1309 (citations omitted). The Appellate Division did not rule in the alternative on the merits of the claim. Respondent has not asserted the affirmative defense that the claim is procedurally defaulted

-13-

based on the Appellate Division's reliance on an adequate and independent state ground. The Court accordingly proceeds to examine the claim on the merits.

"A petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Policano v. Herbert, 507 F.3d 111, 116 (2d Cir. 2007) (alteration and internal quotation marks omitted). Indeed, a claim of insufficient evidence must be denied if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

To analyze the sufficiency of the evidence underlying a state conviction, a federal habeas court looks to the state law to determine the elements of the crime charged. Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). The relevant New York statute provides that "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when[, inter alia,] . . . the building is a dwelling." N.Y. PENAL LAW § 140.25.

As reasons for rejecting Lewis' identification testimony, Petitioner first argues that while Lewis had 5 or 6 seconds to observe the first intruder (i.e., co-defendant Njera Wilson), Lewis only had "one second" to observe the second man and was focused on the gun he was holding. Second, Petitioner argues that the jury

should have weighted more heavily the forensic evidence excluding
his DNA from the duffel bag, gun, crowbar, and screwdriver, and
should have found that this provided conclusive proof that he did
not participate in the burglary. Third, Petitioner contends that
his testimony was more credible than Lewis' testimony.

All of these arguments impermissibly ask the Court to second-
guess the jury's credibility determinations about witnesses, and to
re-weigh testimony and other trial evidence that the jury already
evaluated. In <u>Jackson</u>, the Supreme Court explicitly reaffirmed that
it is "the responsibility of the trier of fact fairly to resolve
conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts." 443 U.S.
at 319. Here, the jury chose to believe Lewis' testimony
identifying Petitioner as one of the burglars, and to find that the
probative value of the DNA evidence was outweighed by other
circumstantial evidence of Petitioner's guilt. For instance, the
police officer who arrived on the scene 2 minutes after the 911
call testified that after first speaking with Lewis, he heard some
rustling in the weeds in the adjoining abandoned lot. As the
officer walked toward the weeds, he saw Petitioner, sweaty and
covered in vegetation; Petitioner at that point was about 30 to 40
feet away from Lewis' residence. Although Petitioner's DNA was not
present on some items recovered at the scene such as the crowbar
and duffel bag, it was found on others, such as the right-hand

glove found inside the duffel bag that also contained the victim's stolen puppy. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326. This Court, on habeas review, "must 'defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses[.]'" <u>Kirkby v. Filion</u>, 644 F. Supp.2d 299, 305 (W.D.N.Y. 2009) (quoting <u>United States v. LeRoy</u>, 687 F.2d 610, 616 (2d Cir. 1982) (citation omitted), <u>cert. denied</u>, 459 U.S. 1174 (1983)). Petitioner's legal insufficiency of the evidence claim cannot provide a basis for habeas relief.

## IV. Correctness of the Persistent Violent Felony Offender Adjudication (Petitioner's Point V)

Prior to sentencing on the instant conviction, a class C violent felony offense, the prosecution filed a notice pursuant to New York Criminal Procedure Law ("C.P.L.") § 400.16 to have the trial court adjudicate Petitioner as a persistent violent felony offender or PVFO based on two prior convictions (first-degree attempted robbery under New York law on December 17, 1988; and first-degree attempted burglary under New York law on January 24, 2002).[3] Due to Petitioner's complaints about his trial counsel, the

---

[3]

Under New York law, a person convicted of a violent felony offense who has previously been convicted of two or more prior "violent felony offenses" is

trial judge assigned a new attorney to represent him during the PVFO hearing, which was held on February 23, 2011. At the hearing, at which both previous attorney's testified, Petitioner asserted that he had not received the effective assistance of counsel in connection with his 1998 conviction because counsel did not advise him of a pre-indictment plea offer or make a suppression motion. He contended that he did not receive the effective assistance of counsel in connection with his 2002 conviction because counsel did not challenge his sentencing as a second violent felony offender or file a notice of appeal. The trial judge rejected Petitioner's hearing testimony as not credible and found that in both the 1998 and 2002 cases, he waived the right to appeal. The trial judge also concluded that both convictions had been constitutionally obtained, and Petitioner therefore would be sentenced pursuant to P.L. § 70.08(5) as a PVFO.

On direct appeal, the Appellate Division rejected Petitioner's contention that the trial court erred in adjudicating him as a PVFO, noting that he was "precluded from challenging the constitutionality of the 1998 conviction because he failed to challenge the constitutionality of that conviction in the 2002 proceedings[.]" Roberts, 111 A.D.3d at 1309 (citation omitted).

Petitioner's sentencing claim is barred from federal habeas corpus review by Lackawanna County Dist. Att'y v. Coss, 532 U.S.

---

treated as a persistent violent felony offender. N.Y. PENAL L. § 70.08; N.Y. CRIM. PROC. L. § 400.16.

394, 403-04 (2001) ("Coss"), which held that holding that "once a
state conviction is no longer open to direct or collateral attack
in its own right because the defendant failed to pursue those
remedies while they were available (or because the defendant did so
unsuccessfully), the conviction may be regarded as conclusively
valid. If that conviction is later used to enhance a criminal
sentence, the defendant generally may not challenge the enhanced
sentence . . . on the ground that the prior conviction was
unconstitutionally obtained." Coss, 532 U.S. at 403. Five justices
of the Supreme Court recognized one exception to this rule: "When
an otherwise qualified . . . petitioner can demonstrate that his
current sentence was enhanced on the basis of a prior conviction
that was obtained where there was a *failure to appoint counsel* in
violation of the Sixth Amendment, the current sentence cannot stand
and habeas relief is appropriate." Id. (citing Gideon v.
Wainwright, 372 U.S. 335, (1963); emphasis supplied). Here,
Petitioner was represented by counsel in connection with the 1998
and 2002 convictions. "Although he argues that [both attorneys
were] ineffective, this claim does not state a Gideon violation."
Facen v. Cully, 787 F. Supp.2d 278, 284 (W.D.N.Y. 2011) (holding
that habeas petitioner's claim that he was not properly adjudicated
as second felony offender at sentencing in prosecution barred by
Coss) (citing Triggs v. Chrones, C-00-4201-CW, 2007 WL 4410389, at
*11 (N.D. Cal. Dec. 14, 2007) ("[T]he Lackawanna [v. Coss]

exception does not apply. Petitioner does not allege that there was a failure to appoint counsel in violation of the Sixth Amendment right to counsel as set forth in <u>Gideon</u>. Petitioner was represented by counsel during the 1982 proceedings; his claim is one for ineffective assistance of that counsel.")).

## V.   Suggestiveness of the Identification Procedure (Petitioner's Point VI)

Plaintiff contends that the pretrial showup identification procedure was unduly suggestive leading to a substantial likelihood of misidentification, and that the <u>Wade</u> hearing should have been reopened to further explore this issue. Respondent argues that this claim is  unexhausted because Petitioner never raised it in a state court forum, and that it also must be deemed exhausted but procedurally defaulted. The Court agrees. <u>See</u>, <u>e.g.</u>, <u>Bond v. Walker</u>, 68 F. Supp.2d 287 (S.D.N.Y. 1999) (petitioner's claim challenging victim's line-up identification and trial identification as tainted was raised only in <u>pro se</u> application for leave to appeal to state's highest court, in form of an ineffective assistance of appellate counsel claim; line-up issue could have been raised on direct appeal, since the facts necessary for review of the claim were contained in the record; because the claim could have been but was not raised on direct appeal, it was deemed exhausted and procedurally defaulted), <u>adhered to on reconsideration</u>, No. 97CIV.3026(LMM), 2000 WL 460592 (S.D.N.Y. Apr. 19, 2000), <u>aff'd</u>, 242 F.3d 364 (2d Cir. 2000). A federal court may

not reach the merits of a procedurally defaulted claim "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (citations omitted). Petitioner did not respond to Respondent's arguments concerning the lack of exhaustion, and has not attempted to establish cause and prejudice to excuse the procedural default, or to make a showing of actual innocence. Accordingly, the Court dismisses this claim as subject to an unexcused procedural default.

## CONCLUSION

For the reasons discussed above, the request by Deyon T. Roberts, a/k/a, Dion T. Roberts, for a writ of habeas corpus is denied, and the petition is dismissed. The Court declines to issue a certificate of appealability because Roberts has not made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

**S/ Michael A. Telesca**
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     October 31, 2016
           Rochester, New York

-20-